## GEORGE W. ELSEA et al. v. ABRAM J. SMITH et al., Appellants.

### Division Two, February 16, 1918.

1. **EVIDENCE: One Party Dead: Competency of Other: General Objection.** The statute (Sec. 6354, R. S. 1909) declaring that if one of the parties to the contract or cause of action is dead the other party to such contract shall not be permitted to testify, was not intended to render incompetent as a witness for all purposes the surviving party to the proceeding, but only to the extent that his testimony might be subject to question by the other party if living. Hence, a general objection to the admission of the testimony of the surviving party based on the death of the other should be overruled, unless the examination discloses a purpose to violate the reason of the rule.

2. ———: **Incorrect Objection.** An incorrect objection urged against the admission of proffered testimony amounts to nothing more than a general objection; and, hence, if the testimony offered is admissible for any purpose, both the incorrect specific objection and a general objection go for naught.

3. **CONVEYANCE: Delivery: Possession of Land.** Where the deed was found in grantee's trunk after her death, and discloses when it was made and signed, and other evidence shows the period of her possession, not only of the deed, but of the land described therein and the nature of her tenure, all in consonance with the deed, and there is no affirmative countervailing evidence, the evidence is sufficient to establish delivery of the deed.

4. **REVIEW: General Finding by Court: No Declarations of Law.** Where the court below in trying issues of fact in a legal action sits as a jury and makes a general finding which the record shows was sustained by substantial evidence, the appellate court will

Elsea v. Smith.

not review the judgment, unless declarations of law were asked or given; and where no declarations of law were asked or given in such case, no questions are left for review except such as may appear in the record proper.

5. **CONVEYANCE: Manual Delivery: Acknowledgment After Grantee's Death.** Acknowledgment is not a prerequisite to the validity of a deed or to a valid transfer by it of the title from the grantor to the grantee. The purpose of the statute requiring acknowledgment (Sec. 2792, R. S. 1909) is to protect creditors and subsequent purchasers. Title vests in the grantee upon the signing and delivery of the unacknowledged deed, and a subsequent acknowledgment, even after the grantee's death, does not affect its validity.

6. ———: **Estate Tail: Reversion Over in Case of Death.** A deed by which the grantor conveyed land to his daughter "and to the heirs of her body begotten," with the proviso that if the said daughter "should die without heirs of her body, said lands shall revert to and become the property of 'the grantor' and in case of his death the same shall descend to his heirs" and "provided further that if said" daughter "shall die, leaving surviving heirs of her body begotten, and the said heirs shall die without issue then said lands shall revert to and become the property of the said" grantor "and in case he be then deceased the same shall descend to his heirs," created an estate tail, and being such, by operation of the statute the daughter took a life estate, and upon her death title vested in her only surviving child, and passed by his will to his devisees at his death without issue, and the reversion to the grantor is void, notwithstanding it is clear that the grantor's intention was that upon the death of his daughter's child without issue the lands should descend to his own immediate heirs.

7. ———: ———: **Remainder: Executory Devise After Fee Vested.** The statute (Sec. 2872, R. S. 1909) abolished estates tail, and provided that, when such an estate is attempted to be created by devise or grant, the first taker shall be seized of the land for life, and that the remainder shall vest in fee in the persons to whom the estate tail would, on the death of the first grantee or devisee in tail, pass in the course of the common law by virtue of such grant or devise. And Section 2874 makes impossible the existence of an executory interest after the vesting of the fee. A vested fee created by law in the second taker cannot be cut down by a defeasance or executory reversion, dependent on the said second taker dying without issue, but upon the death of the first taker becomes absolute in the second.

8. ———: **Remainder: Limited Upon Fee.** A remainder cannot be limited upon an estate in fee, but must have a particular estate to support it.

9. ———: **Insertion of Clause After Delivery.** An insertion in the deed by the grantor at the time of its acknowledgment, long after

its delivery, that the guardian of the infant remainderman was to pay the taxes annually, in no wise affected its validity; it added nothing to and took nothing from the conveyance, and its presence was surplusage.

Appeal from Saline Circuit Court.—*Hon Samuel Davis,* Judge.

AFFIRMED.

*Duggins & Duggins* and *Virgil V. Huff* for appellants.

(1) The plaintiff, George W. Elsea, was incompetent to testify for his co-plaintiff, American Bible Society, as both had an identical interest in the validity of the deed sought to be established. Sec. 6354, R. S. 1909; Hisaw v. Sigler, 68 Mo. 449; 40 Cyc. 2334; Dumbar v. Meadows, 176 S. W. (Ky.) 1167. (2) The delivery of a deed is essential to its operation as a conveyance, and the grantee must have accepted it. Hall v. Hall, 107 Mo. 107; Wren v. Sturgeon, 184 S. W. 1036. (3) The burden of proof of the delivery of a deed is on him who alleges it. 13 Cyc. 730. (4) It is presumed that a deed was not delivered so as to become operative until after the date of its acknowledgment. Fontaine v. Bank, 57 Mo. 561; Barber Asphalt Co. v. Field, 174 Mo. App. 11; Gerardi v. Christie, 148 Mo. App. 91; 13 Cyc. 730, 734. (5) Where a deed shows on its face that it is to be executed by two or more grantors, who afterwards actually execute it, it is presumed that the deed was not delivered until all the grantors had executed the same. Gilman v. Morris, 13 Mo. App. 115; 13 Cyc. 565; Arthur v. Anderson, 9 S. C. 234; Overman v. Kerr, 17 Iowa 489, 490; Parker v. Parker, 67 Mass. 411. (6) When an instrument has been changed or altered, the presumption is that the alteration was made before or at the time of its execution. Paramore v. Lindsay, 63 Mo. 63; 2 C. J. 1275; Kilpatrick v. Wiley, 197 Mo. 123; Stillwell v. Patton, 108 Mo. 352, 360; Carterville v. Luscombe, 165 Mo. App. 521; Collison v. Norman, 191 S. W. 60. (7) The entire conduct of the parties with reference to the deed before

and after its discovery may be taken into consideration in determining when, in fact, the deed was delivered. Miles v. Robertson, 258 Mo. 717; Cook v. Newby, 213 Mo. 471. (8) The execution of a deed will not be presumed until its completion and execution have been established by proof. 13 Cyc. 554; Turner v. Carpenter, 83 Mo. 333, 336; Martindale on Conveyances, sec. 220, p. 201; Tiedeman on Real Property, 812. (9) Although the deed in question was made to Lou E. Elsea and the heirs of her body, with reversion to the heirs of the grantor, and not delivered until after her death, yet the deed would be valid as to the heirs of the body of the first taker named, the description "heirs of the body of Lou E. Elzea" being sufficient to identify Earle N. Elzea as the person intended as grantee under the deed. Papin v. Massey, 27 Mo. 450; Boone v. Moore, 14 Mo. 426; 13 Cyc. 538; Martindale on Conveyances, sec. 67, p. 70; 1 Jones on Conveyances, par. 224, 225, 226. (10) The first provision of the deed, "Provided, however, if the said Lou E. Elzea should die without heirs of her body, said lands shall revert to and become the property of the said Paschal E. Smith, and in case of his (said Paschal E. Smith) death the same shall descend to his heirs," is "dead and out of the case," because that contingency can never happen. Gannon v. Pauk, 200 Mo. 96; Sullivan v. Garesche, 229 Mo. 496; Jones v. Jones 123 S. W. 29. (11) The deed to Earle N. Elsea, the heir of the body of Lou E. Elsea, providing that upon his death without issue the title should revert to the grantor and his heirs, created in Earle N. Elsea an estate in fee simple defeasible upon his death without issue, with reversion to the heirs of Paschal E. Smith. Sec. 2873, R. S. 1909; Yocum v. Siler, 160 Mo. 281; Gannon v. Pauk, 200 Mo. 75; Gannon v. Albright, 183 Mo. 257; Trust Co. v. Curley, 255 Mo. 393, 416; Yocum v. Parker, 130 Fed. 722; 134 Fed. 205; Ives v. Bank, 140 Mo. App. 300; Wilkerson v. Boyd, 136 N. C. 46; 4 Kent, 9, 10; Brown v. Tuschoff, 235 Mo. 458. (12) Sec. 2873, R. S. 1909, has been construed to apply to all limitations upon death without issue, whatever the character of the estate fol-

lowing. Gannon v. Albright, 183 Mo. 257; Faust's Admr. v. Birner, 30 Mo. 417; Naylor v. Godman, 109 Mo. 550. (13) The clause of the deed providing that the estate, in the event of the defeasance without heirs, revert to the grantors and his heirs, being in the nature of a condition, reversionary in character and vested, the rule against perpetuities does not apply to the estate vested in the grantor and his heirs thereby. Gray on Rule Against Perpetuities (2 Ed.), par. 41, 304, 311, 312 and 455; Hopkins v. Grimshaw, 165 U. S. 352; Stewart v. Coshow, 238 Mo. 662, 673; 30 Cyc. 1473; Universalist Society v. Boland, 155 Mass. 171; Tobey v. Moore, 130 Mass. 448; Cowell v. Colorado Springs Co., 100 U. S. 55; French v. Old Society in Boston, 106 Mass. 448; Deacon v. Trust Co., 197 S. W. 26. (14) But if the rule against perpetuities should be offended by the above limitation, the effect would be to render the deed void, and leave the estate in the heirs of the grantor. Lockridge v. Mace, 109 Mo. 162; Riley v. Jaeger, 189 S. W. 1168. (15) "An executory devise may be created to take effect as well on a condition that will terminate an estate tail as one that will terminate an estate in fee simple." Gannon v. Pauk, 183 Mo. 265, 273; 16 Cyc. 608, 609; Linn v. Alexander, 59 Pa. St. 43; 1 Washburn, Real Prop. (6 Ed.), 91; 2 Blackstone Com., 154; 4 Kent Com., sec. 298. (16) Under the statutes of Missouri of 1825 and 1865 abolishing entails, limitations over in default of heirs of the body of the first takers are permitted, and such limitations, being alternate remainders, are outside of the estate tail created in the deed, and in derogation thereof, yet these remainders are not stricken down by the operation of the statute along with the estate tail, but by the uniform decisions of the courts are conserved and enforced as if limited after any other life estate. Farrar v. Christy, 24 Mo. 453, 470; Harbison v. Swan, 58 Mo. 153 (under statute of 1825); Wood v. Kice, 103 Mo. 329; Cox v. Jones, 229 Mo. 53 (under statute 1865, the present statute). It is admitted the rule was otherwise as to such remainders under the statute of 1845 abolishing entails. Brown v. Rogers, 125

Mo. 390. (17) The results of any construction may be taken into consideration in testing the soundness of that construction, and as the purpose of the statute is to abrogate distinctions between estates, and as the construction of the statute not allowing defeasances cutting it down would make a peculiar type of remainder in fee, such construction should be discarded as unsound and out of harmony with the purpose of the statute. 2 Lewis, Sutherland, Stat. Const., 1487-1490; Bowers v. Smith, 111 Mo. 45, 55; Lamar v. Lamar, 128 Mo. 210. (18) The mischiefs to be remedied by the statute are those arising from entails, and not from defeasances and other limitations, and the statute should be confined by contruction within the limits of the obvious purpose of its enactment. 2 Lewis, Sutherland, Stat. Const., 471 et seq.; 4 Kent, 17, 18; Dowdy v. Wamble, 110 Mo. 280; Greeley v. Railway, 123 Mo. 157. (19) Deeds should be so construed as to give effect, if possible, to every word in them, and some effect should be given to the reversionary limitation in the deed at bar. Sims v. Brown, 252 Mo. 58; Perrett v. Bird, 152 N. C. 220.

*Roy D. Williams, A. B. Hoy, A. R. James* and *R. M. Reynolds* for respondents.

(1) The finding and judgment of the trial court on a question of fact in a law case in which no instructions are asked or given cannot be reviewed or disturbed by the appellate court, where there is any substantial evidence to sustain it. Coulson v. LaPlant, 196 S. W. 1144; Rausch v. Michel, 192 Mo. 293; Jordan v. Davis, 172 Mo. 599; Lewis v. Muse, 130 Mo. App. 201; Sutter v. Raeder, 149 Mo. 307; Bozarth v. Legion of Honor, 93 Mo. App. 564; Easley v. Elliot, 42 Mo. 289; Wilson v. Railroad, 46 Mo. 36; Weilandy v. Lemuel, 47 Mo. 322; Hamilton v. Boggess, 63 Mo. 233; Henry v. Bell, 75 Mo. 194; Harrington v. Minor, 80 Mo. 270; Gaines v. Fender, 82 Mo. 497; Cunningham v. Snow, 82 Mo. 587; Seiferer v. St. Louis, 141 Mo. 586; Swayze v. Bride, 34 Mo. App. 414; O'Howell v. Kirk, 41 Mo. App. 523; Claflin v.

Burkhart, 43 Mo. App. 226; Morgan v. Railroad, 51 Mo. App. 523; Hatton v. City of St. Louis, 264 Mo. 634; Scarritt Est. v. Casualty Co., 166 Mo. App. 570; Wilkinson v. Western Union, 163 Mo. App. 148; Pendergast v. Graverman, 166 Mo. App. 33; Strother v. Barrow, 246 Mo. 241; Paxton v. Bonner, 172 Mo. App. 479; Keyser v. Hayes, 190 Mo. App. 380. (2) Every presumption and intendment favor this judgment. No declaration of law or instructions were asked and none were given. If the judgment can be sustained upon any theory, it will be done. Scarritt Estate v. Casualty Co., 166 Mo. App. 570; Rausch v. Michel, 192 Mo. 293. (3) Witness George W. Elsea was a competent witness for his co-plaintiff, American Bible Society. Section 6354, R. S. 1909; Hoyt v. Davis, 30 Mo. App. 309; Steward v. Kirk, 69 Ill. 509; Ely v. Clute, 19 Hun (N. Y.), 332; Story v. Story, 61 S. W. 229 (Ky); Anderson v. Aikens Estate, 157 N. W. 334; 40 Cyc. 2270-c.; Angell v. Hester, 64 Mo. 144; Ray v. Westfall, 183 S. W. 629; Shanklin v. McCracken, 140 Mo. 348; Brown v. Patterson, 224 Mo. 639. (4) The evidence of George W. Elsea being competent for any of his co-parties in this cause, inured to the benefit of all parties, including himself. Ray v. Westfall, 267 Mo. 130; Gunn v. Thurston, 130 Mo. 339; Conrey v. Pratt, 248 Mo. 576. (5) The deed in controversy was delivered to Lou E. Elsea, in her lifetime. In addition to the direct evidence in the record the presumptions in this case favor the delivery of the deed to her. (a) "Where a grantee is in possession of a deed which has been duly executed the presumption arises that it has been duly delivered to him." 13 Cyc. 733; Pitt v. Sheriff, 108 Mo. 110; Allen v. DeGroodt, 105 Mo. 442; Rogers v. Carey, 47 Mo. 232. (b) Where a deed shows on its face that it was signed and sealed on a certain date it will be presumed to have been so signed and sealed on that date. "The date of a deed is prima-facie evidence of its execution on that day." 13 Cyc. 727. (c) The presumption in favor of the delivery of a deed of gift or settlement is declared to be stronger than in the case of a deed of bargain and sale.

13 Cyc. 730; Crowder v. Searcy, 103 Mo. 118. (d) An unacknowledged deed is as effectual to pass title as between the parties thereto and those with actual notice, as though it was duly acknowledged and recorded. St. Joseph v. Baker, 86 Mo. App. 315; Saunders v. Blythe, 112 Mo. 5. (e) Even if George W. Elsea is not a competent witness, there is ample evidence in the record outside of his testimony, to show the gift of this land to Lou E. Elsea and the heirs of her body, by Paschal E. Smith and the delivery of the deed by him to her. (6) The deed was sufficient to and did vest the estate for life in the premises in Lou E. Elsea, the remainder in fee simple in Earle N. Elsea. Sec. 2872, R. S. 1909; Sec. 3941, R. S. 1879; Sec. 2874, R. S. 1909; Sec. 3942, R. S. 1879. (a) Under the common or statute law of England the deed in controversy would have created an estate tail. Fanning v. Doan, 128 Mo. 323. An estate tail, then, being one that reverts to the grantor upon failure of issue of lineal descent from the first taker, cannot be affected by the fact of the grantor putting into the deed the provision for it to revert on failure of such issue, and it still remain an estate tail, though the deed contains a reverter clause. Cox v. Jones, 229 Mo. 53. But estates tail are not permitted in this State. Sec. 2872, R. S. 1909. Section 2874, R. S. 1909, provides that the heirs of the life tenant, as remaindermen shall take as purchaser in fee simple, by virtue of the remainder so limited in them. Gray v. Ward, 234 Mo. 291; Stockwell v. Stockwell, 262 Mo. 671; Hall v. French, 165 Mo. 430; Hunter v. Patterson, 142 Mo. 310; Clarkson v. Clarkson, 125 Mo. 381; Reed v. Lane, 122 Mo. 311; Bone v. Tyrell, 113 Mo. 175; Emmerson v. Hughes, 110 Mo. 627; Phillips v. Laforge, 89 Mo. 72; Burris v. Page, 12 Mo. 358; Farrar v. Christy, 24 Mo. 468; Chiles v. Bartleson, 21 Mo. 344; State ex rel. Farley v. Welsh, 175 Mo. App. 303. (7) The interlineation of the words, ''the taxes is to be paid by the gardee of the child of Lou E. Elsea, yearly,'' adds nothing to nor detracts anything from the title conveyed. The conveyance was still to Lou E. Elsea and to the

heirs of her body. It is immaterial whether they were interlined in the deed at the original delivery thereof to Lou E. Elsea, or whether they were added, in an unauthorized way, by Paschal E. Smith at the time he made the acknowledgment, after the death of Lou E. Elsea. In the last instance, even if they had been words of any significance, they could not effect anything, because they were unauthorized. In the first instance they had no significance, whatever, in passing a title different from the one clearly expressed in the deed to Lou E. Elsea for life and to the heirs of her body upon her death, in fee simple. Where an estate or interest in land is clearly granted, it can not be afterwards cut down by the use of words which are ambiguous or inferential in intent only. Gannon v. Pank, 200 Mo. 94; Sevier v. Woodson, 205 Mo. 214; Small v. Field, 102 Mo. 127; Middleton v. Suddington, 183 S. W. 443. (8) The last proviso in said deed, to-wit: "If the said Lou. E. Elsea, shall die leaving surviving heirs of the body begotten, and the said heir or heirs shall die without issue then the said lands shall revert to and become the property of the said Paschal E. Smith, and in case he shall be then deceased, the same shall descend to his heirs," is void and has no effect whatever. Sec. 2872, R. S. 1909; Sec. 3941, R. S. 1879.

WALKER, P. J.—This is a suit brought by the respondents against the appellants to quiet title to 240 acres of land in Saline County. Upon a trial before the court a judgment was rendered for the respondents, from which the appellants have prosecuted this appeal.

The respondents claim as devisees under a will of Earle N. Elsea, the appellants as the heirs of Paschal E. Smith, who is the common source of title.

In March, 1883, Paschal E. Smith made a deed to the land in controversy to his daughter Lou E., intermarried with one George W. Elsea. Soon thereafter the grantor built a dwelling on the property, as he stated to his neighbors, "for his daughter Lou," to whom he said he had deeded the land. She and her husband

took possession of the premises and improved, occupied and used the same as their own until her death in September, 1885. Two weeks prior thereto she gave birth to a son who is the Earle N. Elsea mentioned herein. The day after her death the deed from her father to the land was found in her trunk. It had not been acknowledged and the evidence is indefinite as to whether it had been signed by the wife of Paschal E. Smith. Several months after the death of Mrs. Elsea, her husband, George W. Elsea, took the deed to Paschal E. Smith, and it was by him and his wife acknowledged and returned to George W. Elsea as originally drawn, with the exception of the insertion in the body of the same of these words: "the taxes to be paid by the guardee of the child of Lou Elsea yearly."

The granting clause of this deed is as follows: "Unto the said Lou E. Elsea, and to the heirs of her body begotten." Between the description of the land and the *habendum* clause appear the following provisos: "Provided, however, if the said Lou E. Elsea should die without heirs of her body, said lands shall revert to and become the property of Paschal E. Smith, and in case of his (said Paschal E. Smith's) death the same shall descend to his heirs. Provided, further, if the said Lou E. Elsea, shall die, leaving surviving heirs of her body begotten, and the said heir or heirs shall die without issue then the said lands shall revert to and become the property of the said Paschal E. Smith and in case he be then deceased, the same shall descend to his heirs." The *habendum* clause is: "Unto the said Lou E. Elsea and to her heirs as above set forth and not otherwise forever."

Earle N. Elsea, named herein, is admitted to have been the only heir of the body of Lou E. Elsea. He lived to manhood and used and occupied the land as his own until March, 1912, when at twenty-seven years of age he died without issue. He left a will devising a life estate in the land to his father, George W. Elsea, and directing upon the death of the latter that the land

be sold by a trustee named and the proceeds turned over to the American Bible Society.

The specific nature of the respective claims of the respondents to the land is, therefore, as follows: George W. Elsea as life tenant; the American Bible Society as residuary legatee; and Henry S. Colvert as trustee and executor named in the will. The property is and has been since the death of Earle N. Elsea in the possession of the life tenant.

The record is indefinite as to the date of the death of Paschal E. Smith. It is sufficient, however, for us to know, which fact does definitely appear, that he was not living at the time of the institution of this suit, and that he died before Earle N. Elsea. Appellants, as heirs at law of Paschal E. Smith, claim title to the lands upon the assumption that there was no sufficient proof of the delivery of the deed from him to Lou E. Elsea, and, as a consequence, that the execution and delivery of same to her former husband, George W. Elsea, after her death, created in Earle N. Elsea as the "only heir begotten of the body of Lou E. Elsea" a defeasible estate in fee, determinable upon the death of the latter without issue; that upon his death without issue the fee, under the terms of the deed, vested absolutely in appellants as heirs of Paschal E. Smith. They also claim alternatively that, if the delivery of the deed in the lifetime of Lou E. Elsea be conceded, her life estate thereby created did not, in view of the death of Earle N. Elsea without issue, destroy their alleged resultant fee in the land which vested upon the delivery of the deed.

The rulings of the trial court assigned as error are: the admission of the testimony of George W. Elsea in behalf of his co-plaintiff, American Bible Society; that the deed was delivered prior to the date of its acknowledgment; that the limitation over to Paschal E. Smith and his heirs after the vesting of the estate of Earle N. Elsea violated the rule as to perpetuities; that Sections 2872 and 2874, Revised Statutes 1909, which abolished entails and out of a life estate created a fee, also struck down the reversionary interest claimed by appellants to

have been created in them as a defeasance or executory interest upon the death of Earle N. Elsea without issue; and generally as a consequence of the foregoing rulings that the court erred in finding for the respondents, and its converse in not finding for appellants. These in their order:

I. The portion of Section 6354, Revised Statutes 1909, invoked by appellants in the contention that error was committed in the admission of the testimony of George W. Elsea, is as follows: "in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, . . . the other party to such contract shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him . . ."

*Surviving Party as Witness.*

A somewhat technical, but at the same time a sufficient, reason for overruling this contention lies in the condition of the record as to the nature and extent of the objections interposed by appellants to the introduction of this testimony. Counsel for appellants urged these general reasons as to the incompetency of the witness: "Well, we think, Your Honor, he cannot testify in the case. He is claiming by and through a deed made by his son, who is deceased, and also under a title that Earle claimed through his mother, and he was the husband of this woman Lou Elsea, and therefore, is incompetent to testify in the case." The objection was overruled, exceptions saved and the witness was permitted to testify in the separate behalf of his co-plaintiff. The reason for the overruling of the objection and the consequent admission of the testimony involves a distinction without a difference because under the express terms of the statute the incompetency extends when applied with reason, not only to the testimony proffered in the witness's own favor, but as well to that in favor of any party to the action claiming under him. While the objection urged is based generally upon the statutory ground of exclusion, viz: the death of one of the original

parties to the contract, it was untimely, too sweeping when made, and was therefore properly overruled. It is a well worn maxim that "the reason of the law is the life of the law." The purpose of this statute, it is true, is to silence the voice of one of the parties to a litigated proceeding, where death has hushed into eternal stillness that of the other; but it must be construed in a reasonable manner and one compatible with the purpose of its enactment. [Weiermueller v. Scullin, 203 Mo. 466.] This statute was not intended to render incompetent as a witness for all purposes the surviving party to the proceeding, but only to the extent that his testimony might be subject to question by the other party if living. In other words, the disqualification is not general, but is limited to transactions between the witness and the party then dead. [Eaton v. Cates, 175 S. W. (Mo.) 953; Mann v. Balfour, 187 Mo. 290, 304; Burns v. Polar Wave Ice Co., 187 S. W. (Mo.) 147.] Ruled otherwise, the reason for the statute ceases to exist. When, therefore, the surviving party to a proceeding is placed on the witness stand, as in this case, a general objection to the admission of his testimony based on the death of the other party should be overruled unless the examination discloses a purpose to violate the reason of the rule. In short, the portion of the statute under review is not one of absolute exclusion, but of limitation. Until the limit has been reached such a witness's testimony is as competent except for the inhibited purposes as that of any other. The objection urged, therefore, to George W. Elsea's testimony, while it correctly stated the reason why same might be incompetent, was ineffectual to preserve reviewable error, unless, upon an attempt being made to introduce evidence of the character intended to be excluded by the statute, timely objection had been made to its admission and exceptions saved to an adverse ruling in regard thereto. Otherwise, the presumption might well be indulged that the objector had contented himself with a statement of a reason why the witness's testimony might be held incompetent but did not care to avail

himself of his right to demand its exclusion when offered. This does not involve a case where a proper objection was made at the threshold of the admission of a class of evidence; the objection was not to the evidence except by inference, but to the witness. It does not come within the rule, therefore, where one general objection to the testimony of a certain class will obviate subsequent objections. Bailey v. Kansas City, 189 Mo. 503, affords an illustration of this class. The only objection other than the one noted, made by counsel for appellant to this testimony, was that the answers sought to be elicited were hearsay. This will not suffice to preserve an objection to the witness's competency under the statute. The reason urged to sustain the objection that the testimony offered was hearsay was, as the record discloses, incorrect. If a portion of the testimony had been hearsay in the absence of a specific objection, to that so classified, the court would have been authorized to overrule the objection as being too broad. [Simpson v. Van Laningham, 267 Mo. 286, 183 S. W. (Mo.) 324.] But the objection incorrectly stated the reason for same. The purpose in requiring specific objections to testimony is to give definite notice of the objector's grounds for same to the trial court and opposing counsel, that the one may be enabled to rule intelligently thereon and that the other may present arguments against its admission. [Kinlen v. Railroad, 216 Mo. l. c. 174; O'Neill v. Kansas City, 178 Mo. 91, 100; Costigan v. Mich. Trans. Co., 38 Mo. App. 219.] An incorrect reason urged against the admission of testimony amounts to nothing more than a general objection to same, because it gives no proper information as to its purpose. If, therefore, the testimony offered is admissible for any purpose, the objection goes for naught. [State ex rel. West v. Diemer, 255 Mo. 336, 164 S. W. (Mo.) 517; Dean v. K. C., St. L. & Chi. Ry., 199 Mo. 386, 97 S. W. 910.] A careful review of this testimony does not, however, disclose an examination which brought the witness within the inhibition of the statute, and while the action of the trial court in overruling the objection is sustained on the

ground that it was not timely nor specific, it is pertinent to add that the appellant was not hurt by the trial court's ruling and has no ground of complaint.

II.   Proof of the delivery of the deed is claimed by appellants to have been lacking.   These are the facts: The deed was found in the trunk of Mrs. Elsea after her death.   The instrument itself disclosed when it was made and signed and other evidence showed the period of her possession, not only of the deed, but of the land described therein and the nature of her tenure.   There was no affirmative evidence to countervail this proof; at best the attempted refutation of same consists of arguments based on inferences. The evidence in itself, therefore, is sufficient to sustain a claim of proof of delivery.   This will suffice to dispose of this contention.   [Barbee v. Bank, 240 Mo. 297, 307; Schooler v. Schooler, 258 Mo. 83.]

*Delivery of Deed.*

This record, however, for a more general reason authorizes the sustaining of the findings of the trial court, not only as to the delivery of the deed, but as to the other facts upon which it based its judgment.   The action which was under Section 2535, Revised Statutes 1909, was tried as one at law; the trial court sat as a jury; no declarations of law or instructions were asked or given; there was substantial evidence to uphold the trial court's finding.   This finding, which was relatively that of a verdict of a jury, was a general one. We will, under such circumstances, not undertake to review the facts, and no question of law having been saved we will review only those which confront us in the record proper.   The rule governing our review in this regard has been given added strength by repeated applications of same to cases presenting like record conditions to the one at bar.   Not only once but often have we said that where the court below in trying issues of fact sits as a jury and makes a general finding which the record shows was sustained by substantial evidence, we will not review the judgment unless declarations of law are asked and refused.   Where, therefore, as here,

*Review.*

the evidence offered reasonably tends to sustain the finding of the trial court, we will hold same to be conclusive (St. Louis v. Railroad, 197 S. W. (Mo.) 1. c. 109; In re Lankford's Est., 197 S. W. (Mo.) 147, 152); and furthermore, where in addition no declarations of law were asked or given no questions are left for review except such as may appear in the record proper. [Rausch v. Michel, 192 Mo. 1. c. 302; Hatton v. St. Louis, 264 Mo. 634, 646; Coulson v. La Plant, 196 S. W. (Mo.) 1144, 1146.]

Appellant urges, however, that although it be conceded that Mrs. Elsea had prior to and at the time of her death manual possession of the deed, yet lacking an acknowledgment, it did not effect a transfer of the prop-

Acknowledgment. erty from the grantor to her; or, in other words, was not such a deed as is contemplated by law and hence did not vest title in her, which did not pass until the date of the acknowledgment, which was subsequent to her death, when the title vested in her issue then in being, who was the Earle N. Elsea mentioned herein.

The statute provides that "all deeds or other conveyances of lands, or of any estate or interest therein, shall be subscribed by the party granting the same, or by his awful agent, and shall be acknowledged or approved and certified in the manner herein provided." [Sec. 2792, R. S. 1909.] Other Sections (Sections 2794 and 2799) prescribe who shall take acknowledgments and the forms of same, but they add nothing to the requirements of Section 2792, and hence need not be considered in this connection. While this section requires an acknowledgment, it is not a prerequisite to the validity of the deed as effecting a transfer of the title from the grantor to the grantee and the latter's heirs. The purpose of the section being to protect creditors and purchasers, the title vests in the grantee without an acknowledgment as completely as if the formalities of the statute had been complied with. [Schroeder v. Turpin, 253 Mo. 258, 270; Vincent v. Means, 207 Mo. 709, 715.] The subsequent acknowledgment in no way

affected the question of validity. The title vested upon delivery as completely as if all formalities had been complied with. The objection, therefore, so far as it seeks support on this ground must be considered without merit.

III. Preliminary contentions disposed of, we are confronted with the construction of the deed from Paschal E. Smith to Lou E. Elsea. Upon this depends the determination of this case. Upon the terms of this deed, Construction the material parts of which we have set out of Deed. in this statement, an estate tail was created. [Tiffany, Mod. Law R. Prop., p. 53, sec. 22; Cox v. Jones, 229 Mo. 53, 65; Clarkson v. Clarkson, 125 Mo. 381, 385; Reed v. Lane, 122 Mo. 311, 313.] That it was the purpose of the grantor to create an estate of this character is evident from the terms of the deed. According to a well established rule a deed is to be construed as nearly as possible in harmony with the purpose of the grantor to be determined from the terms of the instrument. [Eckle v. Ryland, 256 Mo. 424, 440; Howell v. Sherwood, 242 Mo. l. c. 536.] Thus interpreted, it would result in a holding that the title to the land in question is vested in the defendants. An express statute, however, precludes such a ruling. Estates tail have no existence under our system of land tenure; they were abolished in this State in 1825. [I Laws 1825, sec. 4, p. 216.] While this statute was somewhat modified in its phraseology in 1845 (Sec. 5, p. 219, R. S. 1845), and again in 1865 (Sec. 4, p. 442, G. S. 1865), its underlying purpose, despite its changes in verbiage, was and is to abolish this character of estates, and provide, in accordance with the present statute (Sec. 2872, R. S. 1909), the same in effect as its predecessors, that when, according to the terms of a devise, gift, grant or other conveyance, an estate tail is attempted to be created, the first taker shall be seized thereof for his natural life only, and that the remainder shall vest in fee in the persons to whom the estate tail would on the death of the first grantee, devisee or donee in tail pass in the course of the common law by virtue of such gift, grant, devise or conveyance.

Under this statute, therefore, Earle N. Elsea, the only begotten heir of the first taker, was vested upon the death of his mother with an estate in fee in the land in question, and the attempted reversion over to the grantor in the event of the death of the holder of the fee without issue, was of no effect. [Bone v. Tyrrell, 113 Mo. 175, 182; Tennison v. Walker, 190 S. W. (Mo.) 9, 11.] The grantor having died before the holder of the fee eliminates the reversion from consideration, but the attempted limitation over to defendants must for a like reason, viz: the vesting of the fee in Earle N. Elsea, also be held to be invalid. [King v. Theis, 199 S. W. (Mo.) 183; Gray v. Ward, 234 Mo. 291, 297.]

Section 2872, supra, is supplemented by another section which defines the manner in which the estate created by it shall vest, as follows: "Where a remainder shall be limited to the heir or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them." [Sec. 2874, R. S. 1909.] This statute which effected the abolition of the rule in Shelley's case removes from consideration any argument that may be adduced in favor of the existence of an executory interest after the vesting of the fee. Leaving out of consideration, therefore, the rule as to the more strict construction to be given to deeds creating executory interests than to wills creating executory devises (Stallcup v. Cronley's Tr., 117 Ky. 553), we hold that under the statutes cited, where land has been conveyed to a first taker for life with limitations over, that the fee created by law in the second taker cannot be cut down by a defeasance or executory interest, but upon the death of the first taker becomes absolute. Any limitation by construction upon the estate thus created, would destroy the purpose of the statute. An estate in fee having been created, a remainder cannot be limited thereon because the latter must have a particular estate to support it;

any other limitation, whether it be in the nature of an executory interest or other defeasance, being inconsistent with the complete sovereignty of the owner of the fee over the land and his consequent unlimited right of alienation, cannot be attached to the estate and if attempted to be created, is void. [Gannon v. Albright, 183 Mo. 238, 252; 10 R. C. L., p. 648, sec. 3, n. 18.]

The holding as to the absolute fee of Earle N. Elsea renders unnecessary a discussion of the rule as to perpetuities as applicable to this case.

The insertion of the sentence in the deed at the time of its acknowledgment that the guardian of Earle N. Elsea was to pay the taxes on the land, although inserted long after the delivery of the deed, in no wise affected its validity. It added nothing to nor took nothing from the conveyance; its presence was surplusage and its consideration is frivolous.

The care manifested by the trial court in the hearing and determination of this case merits commendation. Finding no error warranting reversal, the judgment is affirmed. It is so ordered. All concur.